**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CANDICE HOWARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-22-00168-PRW |
| | ) |
| JASON BACA *et al.*, | ) |
| | ) |
| Defendants. | ) |

## <u>ORDER</u>

Before the Court are two motions to dismiss, one from Defendants Bobby Elmore and James Bolling (Dkt. 15), and one from Defendant City of Purcell (Dkt. 16). Plaintiff Candice Howard responded to both motions (Dkts. 21, 22), and Defendants replied (Dkts. 23, 24). For the reasons given below, the Court **DENIES** Defendants Elmore and Bolling's Motion to Dismiss (Dkt. 15) and **GRANTS** in part and **DENIES** in part Defendant City of Purcell's Motion to Dismiss (Dkt. 16).

### *Background*[1]

Plaintiff Candice Howard brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of her Fourth and Fourteenth Amendment rights under the United States Constitution, as well as pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA") for alleged violations of state law. These claims arise from an alleged assault

---

[1] At this stage, the Court accepts the plaintiff's well-pleaded allegations as true. Therefore, the account presented in this factual background reflects the plaintiff's account.

and battery committed by Defendant Jason Baca, a former law-enforcement officer for the City of Purcell.

On August 13, 2020, Ms. Howard was in her vehicle at Purcell Lake talking on the phone with friends. A police car pulled up and parked behind Ms. Howard, and a uniformed officer—Defendant Baca—exited his car and approached her. They visited for approximately forty-five minutes. During that visit, Defendant Baca referred to an April 2020 encounter with Ms. Howard when he responded to a police call,[2] stating that he had wanted to comment on her physical appearance but decided against it because his body camera was on. Defendant Baca then told Ms. Howard that, this time, his body camera was off. The remainder of their exchange at Purcell Lake included advances by Defendant Baca: He commented on her appearance and expressed a desire to touch her, but he also stated that he was "with someone." Ms. Howard refused his advances, they shook hands, and Defendant Baca left.

Ms. Howard remained at Purcell Lake talking with friends online until around 3:00 a.m. When she observed a car approaching her, Ms. Howard attempted to back out of her parking spot and leave. But the car parked behind her, blocking her from leaving. Defendant Baca emerged from his police car, approached Ms. Howard's driver-side door, and tried to open it. The door was locked. He ordered Ms. Howard to open the door and remove her seatbelt, and Ms. Howard complied. Defendant Baca then pulled her out of the

---

[2] The First Amended Complaint describes neither the purpose of this first encounter nor the underlying facts.

vehicle and into a standing position. Against Ms. Howard's repeated pleas to stop and attempts to pull away, Defendant Baca kissed her, put his hand inside her shirt, unbuttoned her pants, and rubbed her vaginal area. Ms. Howard then said, "I thought you were with someone." Defendant Baca paused and backed far enough away for Ms. Howard to step into her vehicle. Defendant Baca then returned to his police car and drove away.

Later that day, Ms. Howard reported Defendant Baca to the Purcell Police Department. Defendant James Bolling—the Assistant Chief of Police—then contacted the Oklahoma State Bureau of Investigation ("OSBI"). He revealed to OSBI that earlier in 2020 the Purcell Police Department had received two complaints by women reporting inappropriate interactions with Defendant Baca that made them feel uncomfortable. During OSBI's investigation into Defendant Baca, it identified three total prior instances of alleged sexual misconduct:

1.   The first woman reported that, following Defendant Baca's response to a police call, he called and told her that "she was really beautiful" and that "she had a nice body." Defendant Baca further stated that he knew it was inappropriate to comment on her appearance. This interaction "made the woman very uncomfortable."

2.   The second woman reported that Defendant Baca visited her at a store, covered his police radio, and said "I know a couple places where I cannot be seen and [where] we can do whatever you want to do." This made the woman feel "extremely uncomfortable." The woman mentioned Defendant Baca's wife, and he replied, "What she doesn't know won't hurt her."

3.   And the third woman reported that, following Defendant Baca's response to a police call, he began stopping by her home at night while he was on duty. The woman "felt like Baca was stalking her." Defendant Baca once commented on her haircut and told her that he had "creeped around" on her Facebook. One time Defendant Baca got out of his vehicle. When they shook hands, Defendant Baca "caresse[d] the back of her hand with his thumb, moving it back and forth as they disengaged from the handshake."

Ms. Howard alleges that, before the sexual assault, James Bolling, Bobby Elmore (the Chief of Police), and the City of Purcell had done nothing in response to these prior complaints of sexual misconduct—they neither investigated the complaints nor took any remedial or disciplinary steps to avoid continued or escalated occurrences of this nature.

The First Amended Complaint (Dkt. 12) asserts nine causes of action. The first and second are § 1983 claims against Defendant Baca for violations of Ms. Howard's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and the third is brought under the OGTCA against Defendant Baca and Defendant City of Purcell for assault and battery. The remaining causes of action include claims for negligent supervision and false arrest/imprisonment brought under the OGTCA against Defendant City of Purcell, as well as § 1983 claims against Defendants City of Purcell, Elmore, Bolling, and other unnamed defendants for violations of Ms. Howard's constitutional rights. Defendants City of Purcell, Elmore, and Bolling have moved to dismiss all claims brought against them.

### *Legal Standard*

When reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll well-pleaded facts, as distinguished from conclusory allegations,"[3] must be accepted as true and viewed "in the light most favorable to the plaintiff."[4] Parties bear the "obligation to provide the grounds

---

[3] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

[4] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

of [their] entitle[ment] to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[5] The pleaded facts must be sufficient to establish that the claim is plausible.[6] In considering whether a claim is plausible, the Court "liberally construe[s] the pleadings and make[s] all reasonable inferences in favor of the non-moving party."[7] Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it "state[s] a claim to relief that is plausible on its face," meaning that it pleads sufficient facts to support a "reasonable inference that the defendant is liable for the misconduct alleged."[8]

### *Discussion*

The Court will address Ms. Howard's claims brought under § 1983 before turning to her claims brought under the OGTCA.

### *I.   Section 1983*

To assert a claim under § 1983, a plaintiff must show (1) that a right secured by the Constitution and laws of the United States was violated and (2) that a person acting under color of state law deprived the plaintiff of the right.[9] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[6] *See id.*

[7] *Brokers' Choice of Am., Inc.*, 861 F.3d at 1105.

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[9] *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).

with the authority of state law.'"[10]  This authority may be either "actual or apparent,"[11] and "[w]hether a defendant acted under color of state law is a mixed question of fact and law."[12]

To start, Defendants argue that there was no underlying constitutional violation because Defendant Baca was not acting "under color of state law" when he allegedly sexually assaulted Ms. Howard. According to Defendants, Baca's return to Purcell Lake was for "personal and deviant objectives" rather than "legitimate law enforcement objectives," so his "rogue" actions were not committed under color of law.[13]

Though "it is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state,"[14] the ultimate question is whether "the alleged infringements of federal rights [are] 'fairly attributable to the State.'"[15] This requires "'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant."[16] Here, Ms. Howard has pleaded facts supporting such a nexus. She alleges that Defendant Baca was on duty, in uniform, and carrying a firearm; that he used his patrol car to block her vehicle; that he ordered her to open her door and remove her seatbelt; and that she felt she had to

---

[10] *Jojola v. Chavez*, 55 F.3d 488, 492–93 (10th Cir. 1995) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1941)).

[11] *Id.* at 493.

[12] *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

[13] Defs.' Mot. (Dkt. 15), at 5 (internal quotations omitted).

[14] *Jojola*, 55 F.3d at 493.

[15] *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). *See Jojola*, 55 F.3d at 492.

[16] *Jojola*, 55 F.3d at 493. *See Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1156 (10th Cir. 2016).

comply because he was a police officer. The Court thus concludes, at the motion-to-dismiss stage, that Ms. Howard has pleaded facts supporting "a real nexus" between Defendant Baca's misuse of authority and the alleged sexual assault.[17]

Having rejected Defendant's color-of-law argument, the Court turns to whether the § 1983 claims can proceed against Defendants Elmore, Bolling, and City of Purcell.

### A. Individual Liability

Section 1983 doesn't allow theories based on respondeat superior, so "each Government official, his or her title notwithstanding, is only liable for his or her own

---

[17] In relation to their color-of-law argument, Defendants emphasize Ms. Howard's "fail[ure] to address the most on-point and controlling case law"—an unpublished decision from this Court dismissing state-law claims against a former police officer and a § 1983 claim against a city. Defs.' Reply (Dkt. 24), at 2. First off, unpublished district-court opinions are in no sense "controlling." And second, that case—*Wyrick v. City of Seminole*, No. CIV-19-00133-PRW, 2021 WL 2403445 (E.D. Okla. June 11, 2021)—was decided on entirely different grounds. The § 1983 claim was dismissed because the plaintiff didn't plead *any* facts supporting an inference of a policy or custom, and because she failed to link the officer's "rogue" actions to the "boilerplate policy and training failures she invoke[d]." *Wyrick*, 2021 WL 2403445, at *3. Further, the state-law claims were dismissed on scope-of-employment grounds, not color-of-law grounds. Defendants incorrectly assume these are commensurate inquires, and they are wrong to rely on *Wyrick* for that proposition. The question whether an employee was acting within the scope of his employment is not the same question as whether he was acting under color of law. *See, e.g.*, *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1093 (7th Cir. 1990) ("The 'under color of law' category is broader than the 'scope of employment' category."); *Chavez v. Guerrero*, 465 F. Supp. 2d 864, 869 (N.D. Ill. 2006) ("Contrary to [the defendant's] argument, whether he was acting within the 'scope of employment' is not a factor to be considered in the context of the § 1983 claim raised against him." (citing *Coles v. City of Chicago*, 361 F. Supp. 2d 740, 746 (N.D. Ill. 2005) (explaining that the under-color-of-law and scope-of-employment inquiries "should not be confused")); *Menghi v. Hart*, 745 F. Supp. 2d 89, 101 (E.D.N.Y. 2010), *aff'd*, 478 F. App'x 716 (2d Cir. 2012) ("Whether actions are performed 'in the scope of employment' is a different inquiry as to whether those acts were made 'under color of state law' for § 1983 purposes.").

misconduct."[18]  This means that a plaintiff asserting a § 1983 claim against a supervisory official "must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."[19]  A plaintiff must therefore "show an 'affirmative link' between the supervisor and the constitutional violation."[20]  The "affirmative link" requires (1) personal involvement, (2) causation, and (3) a culpable state of mind.[21]  Defendants Bolling and Elmore attack Ms. Howard's First Amended Complaint under each of the affirmative-link prongs.

### 1. Personal Involvement

Individual liability under § 1983 requires the defendant's "personal involvement in the alleged constitutional violation."[22]  But this personal involvement need not be direct, because "§ 1983 states any official who causes a citizen to be deprived of her constitutional rights can also be held liable."[23]  A plaintiff can show a supervisor's personal involvement "by demonstrating his personal participation, his exercise of control or direction, . . . his failure to supervise, . . . or his knowledge of the violation and acquiesce[nce] in its

---

[18] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted).

[19] *Dodds v. Richardson*, 614 F.3d 1185, 1197 (10th Cir. 2010).

[20] *Schneider*, 717 F.3d at 767 (quoting *Dodds*, 614 F.3d at 1195).

[21] *Id.*; *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

[22] *Schneider*, 717 F.3d at 768 (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).

[23] *Dodds*, 614 F.3d at 1195 (cleaned up).

continuance."[24] A supervisor's "promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights" can also constitute personal involvement.[25]

To establish personal involvement in this case, Ms. Howard alleges that Defendant Elmore (1) maintained a policy or custom of "not investigating complaints made by women accusing Purcell police officers of sexual harassment, misconduct, and/or assault"; and (2) chose "not to train officers in supervisory capacities to investigate complaints of sexual harassment, misconduct, and/or assault" and "failed to train those supervisory officers to supervise, remedially train, and/or discipline officers under their supervision who have received complaints of sexual harassment, misconduct, and assault."[26] Ms. Howard also alleges that Defendants Elmore and Bolling both chose "not to take any steps to further supervise Baca after receiving multiple complaints of sexual harassment, misconduct, and/or assault by Baca."[27]

Viewing the well-pleaded facts in the light most favorable to Ms. Howard,[28] she has sufficiently alleged that Defendants Elmore and Bolling were personally involved in a constitutional violation. She alleges that Defendants Elmore and Bolling did nothing in response to credible complaints regarding Defendant Baca's sexual misconduct,

---

[24] *Id.* (internal quotations and citations omitted).

[25] *Id.*

[26] Pl.'s First. Am. Compl. (Dkt. 12), at 29–31.

[27] *Id.* at 37.

[28] *Alvarado*, 493 F.3d at 1215.

misconduct that involved allegations of sexual comments, physical touch, stalking, and attempts to engage in sexual activity while on duty. Defendant Elmore's alleged failure to investigate and to train other supervisory officers to investigate these complaints supports an inference that he was personally involved in a constitutional violation.[29] This is also true for Defendant Elmore's and Bolling's alleged failure to supervise Defendant Baca after receiving multiple credible complaints regarding Baca's sexual misconduct.[30] The Court thus concludes that Ms. Howard has, at the motion-to-dismiss stage, satisfied the personal-involvement prong of her supervisory liability claims.

### 2. Causation

Ms. Howard has also sufficiently pleaded causation. The "requisite causal connection" requires a showing that "the defendant[s] set in motion a series of events that the defendant[s] knew or reasonably should have known would cause others to deprive the

---

[29] *Cf. Johnson v. Martin*, 195 F.3d 1208, 1219 (10th Cir. 1999) ("In instances in which a plaintiff demonstrates that a supervisor had actual knowledge of the harassment but failed to take any remedial action (e.g., by investigating the allegations and taking disciplinary action against the harassing subordinate employee), courts have concluded that the supervisor may be held liable. . . . Accordingly, accepting the statements of [the alleged victims of sexual harassment] as true, the record supports the inference that [the supervisor] knew about the allegations of sexual harassment in July 1994 but took no remedial action. Such knowledge and subsequent inaction is sufficient to establish supervisory liability under § 1983."); *Keith*, 843 F.3d at 838 ("[A] supervising prison official may be liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable.") (internal quotations omitted).

[30] *See Johnson*, 195 F.3d at 1219; *see also Dodds*, 614 F.3d at 1195 ("A plaintiff [can] establish the defendant-supervisor's personal involvement by demonstrating his personal participation, his exercise of control or direction, or his *failure to supervise*.") (emphasis added).

plaintiff of her constitutional rights."[31] Defendants Elmore and Bolling argue that it was not the failure to investigate, train others to investigate, or supervise Baca that caused an alleged violation of Ms. Howard's constitutional rights—according to them, Defendant Baca's "rogue and deviant actions" alone caused the alleged violation.[32] But Ms. Howard replies that, in the face of multiple credible complaints about Baca's sexual misconduct, it was foreseeable that a failure to take any action in response to those complaints would result in continued sexual misconduct, including the alleged sexual assault. The Court agrees with Ms. Howard and finds that, based on the allegations in the First Amended Complaint, she has satisfied the causation prong of her supervisory liability claims.

### 3. Culpable State of Mind

It isn't enough to plead that Defendants Elmore's and Bolling's personal involvement caused a constitutional violation—she must also allege facts sufficient to support a finding that they possessed the requisite state of mind. Here, that requisite state of mind is "deliberate indifference."[33] The deliberate-indifference standard "require[es] proof that a municipal actor disregarded a known or obvious consequence of his action."[34] Ms. Howard must therefore plead facts making it plausible that Defendants Bolling and Elmore "knowingly created a substantial risk of constitutional injury" by "deliberately or

---

[31] *Keith*, 843 F.3d at 847.

[32] Defs.' Mot. (Dkt. 15), at 17.

[33] *See Schneider*, 717 F.3d at 769; *Mahdi v. Salt Lake Police Dep't*, 54 F.4th 1232, 1236 (10th Cir. 2022); *Dodds*, 614 F.3d at 1196.

[34] *Schneider*, 717 F.3d at 769 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).

consciously fail[ing] to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by [Ms. Howard]."[35]

As previously discussed, Ms. Howard alleges Defendants Elmore and Bolling knew of three credible complaints regarding Defendant Baca's sexual misconduct while he was on the job and in uniform. That misconduct allegedly involved sexual comments, physical touch, stalking, and attempts to engage in sexual activity. Defendants argue that Baca's prior sexual misconduct fundamentally differs from *this* sexual misconduct. But Ms. Howard's allegations are sufficient to support an inference, at the motion-to-dismiss stage, that Defendants Elmore and Bolling consciously disregarded an obvious risk of constitutional harm to Baca's next victim.[36] In light of Defendant Baca's prior on-the-job sexual misconduct, Ms. Howard's allegations make it plausible that Baca's latest sexual misconduct came as no surprise to Defendants Elmore and Bolling.

For the reasons given above, Ms. Howard has sufficiently alleged personal involvement, causation, and state of mind.

### 4. Qualified Immunity

Defendants Elmore and Bolling also assert that they are immune from suit because they are entitled to qualified immunity. Qualified immunity protects government officials

---

[35] *See id.*

[36] *Cf. Keith*, 843 F.3d at 848 (stating that a supervisor can be deliberately indifferent when he "has knowledge of a substantial risk of serious harm" and "is aware of and fails to take reasonable steps to alleviate that risk").

sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[37] Ms. Howard must therefore show (1) that Defendants Elmore's and Bolling's alleged conduct violated a constitutional right and (2) that the right was clearly established at the time of the alleged unlawful activity.[38]

To be clear, the question is not whether Defendant *Baca's* alleged conduct violated a constitutional right. Because § 1983 "doesn't authorize liability under a theory of respondeat superior,"[39] Ms. Howard must show that Defendants Elmore and Bolling personally violated her constitutional rights.[40] For all the reasons given above, Ms. Howard has sufficiently pleaded that Defendants Elmore and Bolling violated her constitutional rights when they allegedly failed to investigate, train others to investigate, or supervise Baca despite knowing of multiple credible complaints regarding sexual misconduct against women in the Purcell community. The remaining question is thus whether "the contours of the constitutional right at issue . . . [were] sufficiently clear that a reasonable official would have underst[ood] that what he [was] doing violate[d] that right."[41] The contours of the

---

[37] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

[38] *See Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018).

[39] *Id.* (internal quotation marks omitted).

[40] *See id.*

[41] *Perry*, 892 F.3d at 1122–23.

particular right are sufficiently clear if Ms. Howard "identif[ies] an on-point Supreme Court or published Tenth Circuit decision."[42]

In determining whether the law was clearly established at the time of the alleged violation, "courts must not define the relevant constitutional right 'at a high level of generality.'"[43] Instead, "the clearly established law must be particularized to the facts of the case."[44] This avoids "convert[ing] the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging a violation of extremely abstract rights."[45] Ms. Howard must demonstrate, therefore, that when Defendants Elmore and Bolling received complaints regarding Defendant Baca's alleged sexual misconduct, clearly established law would have put "reasonable official[s] in [their] position[s] on notice that [their] *supervisory conduct* would violate [Ms. Howard's] constitutional rights."[46]

Ms. Howard has identified a published Tenth Circuit decision in which officials acting under similar circumstances were denied qualified immunity under a theory of supervisory liability for alleged violations of the Fourteenth Amendment. In *Johnson v. Martin*,[47] a city employee allegedly used his authority to make inspection visits at homes in Muskogee. Supervisors received numerous complaints that, during the inspections, the

---

[42] *Id.* at 1123.

[43] *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

[44] *White*, 580 U.S. at 79.

[45] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

[46] *See Perry*, 892 F.3d at 1123.

[47] 195 F.3d 1208, 1213 (10th Cir. 1999).

employee "repeatedly made sexual comments . . . and engaged in unwelcome touching."[48] There were also complaints that on separate occasions the employee had offered money in exchange for sex, forced his way into a home, and engaged in a pattern of sexual harassment.[49] Having received these complaints, the employee's supervisors allegedly took no action in response.[50]

Though the number of complaints and the nature of the harassment in *Johnson v. Martin* differ from the alleged facts in Ms. Howard's First Amended Complaint, the essential allegations are the same: Supervisors received complaints of an employee's alleged sexual misconduct against members of the community yet did nothing. The Tenth Circuit made clear that supervisors "could be held liable . . . for failing to take action against [the employee] after receiving complaints about him."[51] This means that a supervisor can be on the hook when "a plaintiff demonstrates that a supervisor had actual knowledge of the harassment but failed to take any remedial action (e.g., by investigating the allegations and taking disciplinary action against the harassing subordinate employee)."[52]

Since *Johnson v. Martin*, reasonable officials in Defendants Elmore's and Bolling's positions would have been on notice that it would violate the Constitution to take no action

---

[48] *Johnson v. Martin*, 195 F.3d 1208, 1211 (10th Cir. 1999).

[49] *Id.*

[50] *Id.* at 1220 ("[The supervisor] knew about the allegations of sexual harassment in July 1994 but took no remedial action. Such knowledge and subsequent inaction is sufficient to establish supervisory liability under § 1983.").

[51] *Id.* at 1213.

[52] *Id.* at 1219.

in response to known complaints of sexual misconduct committed by a police officer. Ms. Howard has thus carried her burden to show that, at the motion-to-dismiss stage, Defendants Elmore and Bolling are not entitled to qualified immunity.

### B.  Municipal Liability

Defendant City of Purcell has moved to dismiss Ms. Howard's municipal-liability cause of action brought under § 1983. Municipal liability is limited to actions "for which the municipality is actually responsible."[53] To prove municipal liability under § 1983, a plaintiff must therefore show (1) that a municipality enacted or maintained a policy or custom, (2) that the policy or custom caused the alleged violation, and (3) that the municipality was deliberately indifferent to the resulting constitutional violation.[54]

### 1.  Policy or Custom

For a § 1983 claim brought against a municipality, a plaintiff must show the existence of a municipal policy or custom.[55] A policy or custom can be "a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees."[56] Ms. Howard relies on the latter three methods of establishing an official policy or custom.

---

[53] *Schneider*, 717 F.3d at 770.

[54] *Id.* at 769.

[55] *Monell v. Dep't of Social Services*, 436 U.S. 658, 691–92, 694 (1978).

[56] *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017).

First, she alleges that Defendant Elmore, as the City of Purcell's Chief of Police and final decision-maker for the Purcell Police Department, decided not to investigate the prior complaints of sexual misconduct. It is plausible that this decision was part of Defendant Elmore's policy or custom not to investigate credible complaints lodged against Purcell police officers.[57] Ms. Howard also alleges that Defendant Elmore knew of the inaction of supervisory officers (including Defendant Bolling) and chose not to respond, thus ratifying their decision to ignore the complaints and the obvious risk Defendant Baca posed to the community.[58] And as previously discussed, Ms. Howard alleges facts supporting an inference that Defendant Elmore failed both to train supervisory officers to investigate credible complaints of sexual misconduct and to supervise Defendant Baca in the face of the multiple complaints made against him.[59] Ms. Howard has thus sufficiently pleaded the existence of a policy or custom.

---

[57] *Cf. Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004) ("[T]he failure to take disciplinary action in response to an illegal arrest, when combined with other evidence, could tend to support an inference that there was a preexisting de facto policy of making illegal arrests.").

[58] *See Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) ("[I]f a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it, their ratification will be chargeable to the municipality.").

[59] *Cf. Schneider*, 717 F.3d at 773 ("A municipality can be liable where the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.") (internal quotations omitted); *Johnson*, 195 F.3d at 1219 ("In instances in which a plaintiff demonstrates that a supervisor had actual knowledge of the harassment but failed to take any remedial action (e.g., by investigating the allegations and taking disciplinary action against the harassing subordinate employee), courts have concluded that the supervisor may be held liable. . . . Accordingly, accepting the statements of [the alleged victims of sexual harassment] as true, the record supports the

*2. Causation*

To show causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right."[60] This requirement is satisfied if a plaintiff "shows that the municipality was the moving force behind the injury alleged."[61] When a plaintiff alleges that a municipality caused an employee to inflict a constitutional harm, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees."[62]

Even applying this rigorous standard, and for the same reasons discussed above with respect to Defendants Elmore and Bolling, Ms. Howard has sufficiently alleged that the City of Purcell's policy or custom caused a constitutional harm. Accepting the well-pleaded facts as true, the City of Purcell decided not to investigate the known prior complaints of Defendant Baca's sexual misconduct, train supervisory officers to investigate such complaints, or supervise Baca. Instead, after learning of his propensity to sexually harass and assault women, and despite that obvious risk, the City of Purcell sent Defendant Baca

---

inference that [the supervisor] knew about the allegations of sexual harassment in July 1994 but took no remedial action. Such knowledge and subsequent inaction is sufficient to establish supervisory liability under § 1983."); *Keith*, 843 F.3d at 838 ("[A] supervising prison official may be liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable.") (internal quotations omitted).

[60] *Schneider*, 717 F.3d at 770.

[61] *Id.*

[62] *Id.*

to continue patrolling the community. Ms. Howard has sufficiently alleged that the City of Purcell "was the moving force behind the injury alleged."[63]

### 3. Culpable State of Mind

Ms. Howard has also sufficiently alleged that Defendant City of Purcell was deliberately indifferent to a substantial risk of constitutional harm. A municipality is deliberately indifferent when it has "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation" and the municipality "consciously or deliberately chooses to disregard the risk of harm."[64] Notice is shown by "proving the existence of a pattern of constitutional violations or, in a narrow range of circumstances, if a 'violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.'"[65]

Though Ms. Howard hasn't pleaded any facts showing a pattern of similar constitutional violations, she has sufficiently alleged that the prior complaints of sexual misconduct made the sexual assault a "highly predictable or plainly obvious consequence" of the City of Purcell's alleged inaction. Thus, for the same reasons given above for her claims against Defendants Bolling and Elmore, Ms. Howard has pleaded facts sufficient to support an inference that Defendant City of Purcell was deliberately indifferent to a plainly

---

[63] *Id.*

[64] *Id.* at 771 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

[65] *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022) (quoting *Schneider*, 717 F.3d at 771).

obvious consequence of its inaction.[66] The Court thus denies the City of Purcell's motion to dismiss Ms. Howard's municipal-liability claim.

## II.   State-Law Claims

Ms. Howard also brings three state-law claims against the City of Purcell. Two claims are based on a theory of respondeat superior (one for assault and battery and one for false arrest/imprisonment), and one claim is based on a theory of direct liability (negligent supervision).

### A.  Assault and Battery and False Arrest/Imprisonment

The OGTCA is the exclusive means by which an injured plaintiff may recover tort damages from a political subdivision of the state, including from a municipality like the City of Purcell.[67] Further, a municipality is liable only for the torts committed by its employee while that employee was acting within the scope of his employment.[68] The OGTCA defines "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment."[69] This means that Defendant Baca's "good faith" is relevant to whether he was acting within his scope of

---

[66] *Brown v. Gray*, 227 F.3d 1278, 1289 (10th Cir. 2000) (stating that for a city to be held liable under § 1983, "the plaintiff must show that a policymaker, which could be the chief of police, among others, was deliberately indifferent").

[67] *See Fuller v. Odom*, 741 P.2d 449, 451 (Okla. 1987); Okla. Stat. tit. 51, § 153(B).

[68] *Carswell v. Oklahoma State University*, 995 P.2d 1118, 1123 (Okla. 1999); Okla. Stat. tit. 51, § 153(A).

[69] Okla. Stat. tit. 51, § 152(12).

employment, and thus relevant to whether the City of Purcell can be on the hook for his actions.

Based on the facts alleged in the First Amended Complaint, no inference can be drawn that Defendant Baca was acting in good faith within his duties as a police officer when he returned to Purcell Lake, blocked Ms. Howard from leaving, pulled her from her vehicle, and sexually assaulted her. Ms. Howard argues, however, that "[t]he false arrest/imprisonment *prior to the assault* can be considered within the course and scope of Baca's employment and acts incident to his position."[70] But she alleges no facts supporting an inference that Defendant Baca's return to Purcell Lake—even before the assault—was ever for a legitimate law-enforcement purpose. The only reasonable inference is that, for that entire sequence of events, Defendant Baca was not pursuing law-enforcement objectives and was instead pursuing personal, deviant objectives.

For this reason, Ms. Howard has failed to state a claim against the City of Purcell based on the alleged assault and battery and false arrest/imprisonment committed by Defendant Baca. These claims are thus dismissed.

### B. *Negligent Supervision*

The City of Purcell also seeks dismissal of Ms. Howard's negligent-supervision claim, invoking an exemption from liability under the OGTCA for "any act or service which is in the discretion of the [municipality] or its employees."[71] The City argues that

---

[70] Pl.'s Resp. (Dkt. 21), at 31.

[71] *See* Okla. Stat. tit. 51, § 155(5).

personnel decisions—including decisions regarding supervision—are discretionary, so the discretionary-function exemption bars a negligence claim based on such decisions. But Ms. Howard responds that "the failure to take action with full knowledge of the danger posed by Baca's conduct" is an operational action, not a discretionary one, so the discretionary-function exemption doesn't apply.[72]

These arguments require an interpretation of state law. "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."[73] The parties have not presented any controlling decision concerning the discretionary-function exemption's applicability to negligent-supervision claims, nor has the Court's independent research uncovered any. So the Court must endeavor to predict how the Oklahoma Supreme Court would rule on this issue.

The Oklahoma Supreme Court has articulated a "planning-operational approach" to the discretionary-function exemption.[74] Under this approach, "initial policy level or planning decisions are considered discretionary and hence immune, whereas operational level decisions made in the performance of policy are considered ministerial and not exempt from liability."[75] This means that "the government retains its immunity with

---

[72] Pl.'s Resp. (Dkt. 21), at 32.

[73] *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (internal quotations omitted).

[74] *Nguyen v. State*, 788 P.2d 962 (Okla. 1990).

[75] *Id.* at 964–65.

respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decisions."[76] To show that the City of Purcell's decision falls within the latter category, Ms. Howard relies solely on the alleged fact that the City of Purcell *knew* of Defendant Baca's prior misconduct.[77] So, according to Ms. Howard, that alleged knowledge of prior misconduct transformed a discretionary decision into an operational one.

This argument is unpersuasive. If the exemption's applicability hinges on whether a plaintiff alleges prior knowledge of an employee's propensity to commit an unlawful act, as Ms. Howard argues, it is unclear how the discretionary-function exemption could ever apply to negligent-supervision claims. That is because "[t]he critical element for recovery is the employer's *prior knowledge* of the servant's propensities to create the specific danger resulting in damage."[78] Not only is Ms. Howard's argument misplaced, but it is also against the weight of cases interpreting Oklahoma law and applying the discretionary-function exemption to claims for negligent supervision.[79] In sum, the Court finds no factual

---

[76] *State ex rel. Oklahoma Dep't of Pub. Safety v. Gurich*, 238 P.3d 1, 3 (Okla. 2010) (quoting *Nguyen*, 788 P.2d at 965).

[77] Pl.'s Resp. (Dkt. 21), at 20–21 (citing *Childers v. Watts*, 20-CIV-487-RAW, 2021 WL 4269356 (E.D. Okla. Sept. 20, 2021)).

[78] *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999) (emphasis added).

[79] *See, e.g.*, *Higginbottom v. Mid-Del Sch. Dist.*, No. CIV-15-1091-D, 2016 WL 951691, at *3 (W.D. Okla. Mar. 9, 2016); *Houston v. Indep. Sch. Dist. No. 89 of Oklahoma Cnty.*, 949 F. Supp. 2d 1104, 1109 (W.D. Okla. 2013); *Young v. Okla. City Pub. Sch., Indep. Sch. Dist. 89*, No. CIV-13-633-M, 2013 WL 6567144, at *3 (W.D. Okla. Dec. 13, 2013) ("[T]he school district's decision regarding hiring, retention, and supervision of its employees is deemed to be a discretionary act and, thus, falls under the GTCA's discretionary exemption."); *White v. City of Tulsa*, No. 13-CV-128-TCK-PJC, 2013 WL 4784243, at *5 (N.D. Okla. Sept. 5, 2013) ("White's negligence claim is based on the City's discretionary

allegations from which to conclude that the City of Purcell's decisions were operational or ministerial rather than related to planning or policy, so the discretionary-function exemption bars Ms. Howard's negligent-supervision claim.

### III.   Punitive Damages

Finally, Defendants Elmore and Bolling argue that Ms. Howard has failed to state a claim for punitive damages against them. This is because Ms. Howard "makes no allegation, whatsoever, that Elmore or Bolling acted with evil intent or motive to cause Ms. Howard harm."[80] She responds, however, that Elmore's and Bolling's deliberate indifference is sufficient for an award of punitive damages. The Court finds that Ms. Howard has sufficiently pleaded facts supporting a claim for punitive damages.

An award of punitive damages against a supervisor in a § 1983 action is available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[81]

---

acts of training officers, supervising officers, and conducting investigations of citizen complaints and is therefore barred by the discretionary function exemption of the OGTCA."); *Allen v. Justice Alma Wilson Seeworth Academy, Inc.*, No. CIV-12-93-HE, 2012 WL 1298588, at *2 (W.D. Okla. Apr. 16, 2012) (school board's training, supervision, and retention of its employees was "discretionary" under OGTCA); *Fumi v. Board of County Comm'rs of Rogers County*, No. 10-CV-769-TCK-PJC, 2011 WL 4608296, at **6–7 (N.D. Okla. Oct. 3, 2011) (concluding that entity was immune from officers' alleged negligent hiring, training, supervision, and retention); *Burns v. Holcombe*, No. 09-CV-152-JHP, 2010 WL 2756954, at *15 (E.D. Okla. July 12, 2010) ("The language of the GTCA as well as recent case law construing these provisions makes clear the state and/or a political subdivision is not subject to suit for discretionary acts such as hiring, supervising, and training employees, as well as enforcement or adoption of rules or policies.").

[80] Defs.' Mot. (Dkt. 15), at 33.

[81] *Burke v. Regalado*, 935 F.3d 960, 1037 (10th Cir. 2019).

24

Indeed, "whether the defendant acted with indifference or a reckless disregard for the . . . safety of others" is necessary for assessing "the degree of reprehensibility of a defendant's conduct," which is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award."[82] As the Court has already concluded, Ms. Howard has sufficiently alleged that Defendants Elmore and Bolling acted with deliberate indifference to her constitutional rights. The Court therefore denies Defendants' motion with respect to punitive damages.

### *Conclusion*

For the reasons given above, the Court **DENIES** Defendants Elmore and Bolling's Motion to Dismiss (Dkt. 15) and **GRANTS** in part and **DENIES** in part Defendant City of Purcell's Motion to Dismiss (Dkt. 16). Accordingly, the Court **DISMISSES** Ms. Howard's Fourth and Fifth Causes of Action, as well as her Third Cause of Action with respect to Defendant City of Purcell. The remaining claims will proceed to discovery.

**IT IS SO ORDERED** this 31st day of March 2023.

_____

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[82] *Id.*